They'll now hear argument in the United States v. Scott and Santiago. Okay. Mr. Wilstadter. Good morning, Your Honors. This case presents both legal insufficiency and also some plain error charge errors that are serious. First, with respect to the conspiracy count, there was no planning proven. There was an entirely spontaneous incident. There was no testimony that anyone heard, saw, or experienced any kind of encouragement or direction from Kathy Scott. Well, she directed the two probationary officers out of the room, right? According to the testimony. She directed them into the bubble, which was — from which everything was visible. So there is no indication that that is any kind of part of any conspiracy. I mean, they're probationary employees, and her ordering them to go into a glassed enclosure from which the entire thing is visible cannot be considered an act in furtherance of a conspiracy or a direction to anyone to do anything improper. The direction that — the other direction that she gave was when an officer whose job was getting a hold of the resisting inmate's legs, she ordered Cosman and Lowry, who were two other officers, to engage in something called a leg lock to hold the inmate's legs. And it was after that instruction that other officers spontaneously kicked and struck the inmate. Nothing in the conduct of the defendant in trying to, according to one witness but not to others, to put a handcuff on the resisting inmate, there was testimony from an officer whose name was Lowry, that Kathy Scott was putting a handcuff on the right arm of the inmate while he had his left arm and was refusing to allow it to be removed from underneath his body. So nothing in the fact that she was trying to restrain an inmate who was resisting indicates that she was engaged in any conspiracy, because the injury to the inmate, according to the government's evidence, took place after that. So there really was no proof of any tacit agreement. Of course, the government was relying on tacit agreement because there was no explicit agreement. So the group assault, I mean, isn't it reasonable to conclude that they had reached an understanding about what they were doing? No, because there was no – nobody said we all knew what we were going to do. Nobody said that the defendant urged us, hit him or hold him down so we can get him better or anything like that. But why is that necessary? That's not what's required for a conspiracy. Well, there was no evidence to the – that affirmative evidence that she did anything to encourage, lead, supervise or anything like that with respect to that. It also relates to the leadership point, which is the sentencing issue, and the restraint point, because there was no proof that the restraint that my client engaged in was intended to allow or facilitate an assault. So these are just – you know, because the court disapproved of the assault, the conviction was allowed to stand, notwithstanding that there was no proof that my client joined a conspiracy or aided and abetted the substantive offense, because there was – that statute requires, as our Supreme Court says, that someone engage in an affirmative act, and the jury instructions permitted a failure to act, which is not the law. He – the court misstated that and indicated that a failure to act, to do something with a bad purpose, was enough. But that is not what is required. And the reason it's not – that's not what is required is because Section 2 requires an affirmative act, and to fail to act is not enough, unless the statute requires someone to do something like to register as a sex offender. I thought your client helped to restrain Mr. Moore and ordered Mr. Lowery, I guess, to assist while there were other officers that were involved in the assault? There was – no. What was happening was – forgive me. But what was happening was that the inmate was resisting being locked into a cell. They took him to the ground. He was resisting being restrained. He didn't want to be handcuffed, so he was refusing to allow his left arm to come out from under his body. And so she's trying to get his left arm out and put his right hand or wrist in a handcuff. And during that time, she orders Lowery and Cosman to effect a leg lock. It's after that that really the assault takes place. So that episode is separate from the assault? Is that what you're – Well, it's before. Before. It's separate. It's before. And so this is, you know, why I'm saying that the government's argument is essentially because the – that she was trying to lawfully restrain the inmate and that afterwards there was an assault, therefore, that my client did the restraint in order to facilitate the assault, but there was no such proof in the case. So – and the same kinds of issues come up with respect to the sentencing, because the Court imposed a leadership role on the basis of her status as a correction sergeant, but in fact, there was nothing that she did to lead the enterprise. And the Court below basically found that because she was a supervisor, that her very status as a supervisor and failing to act gave the green light, the Court said. And that was enough. But that is not what the sentencing guidelines call for. I see my time is up. But she did have authority over the other officers. And she did, like any kind of a supervisor, but she didn't manage, she didn't direct, she didn't recruit, she didn't have a larger share of some kind of benefit out of it than anybody else. All of the factors that are in the sentencing guidelines cannot be checked off with respect to Kathy Scott. It's only her – I'm sorry, Your Honor. But, I mean, it's – she also, according to the testimony at trial, directed others to lie about what happened, right? She led the cover-up, right? So what we've said is that there is a grouping issue with respect to that. So even if she was a leader with respect to the false statement counts, those counts have a lower sentencing guideline than the assault. So you're not challenging that? No. No. You're not challenging leadership on the cover-up or the obstruction? That's right. It's just that in this case, if we were to find, if the Court were to find that the procedural error and resentencing, because the leadership with respect to the false statement counts results in a much lower guideline range. All right. You've reserved two minutes? One minute, Your Honor. Oh, one minute. I'm sorry. You're right. Thanks. Mr. Hawkeiser, you've got four minutes and one minute rebuttal, so five total. May it please the Court, my name is Daniel Hawkeiser, and I represent Defendant Appellant George Santiago, Jr. Your Honors, I advanced four arguments in my brief. I want to start by discussing the ineffective assistance of counsel argument, and I direct Your Honors to page 28 of my original brief, which contains an excerpt of the transcript of the recross examination by trial counsel, which was incompetent and damaged my client greatly, and it reads as follows. Question Mr. Brown, sorry about that. When you met with the government on May 12th, you explained to them that you met Mr. Santiago because he had just returned from being locked out or disciplined for a prior use of force. Answer, yeah, that's one of the things I said, yes. Now, this case is about my client, a former corrections officer at downstate in Fishkill, beating up an inmate with other corrections officers. Out of the clear blue sky, for no strategic reason, the trial lawyer asks as an afterthought on recross examination about a prior bad act involving beating up another inmate that the jury would have never known about. Mr. Hawkeiser, we usually, or often, sort of don't address ineffective assistance claims on direct appeal, have those be part of a 2255, which will then allow also the defense lawyer to articulate perhaps a reason for what they did. Any reason why we shouldn't do that here? Well, I don't object to remanding for further development of the record in the district court. Well, the habeas would be in the district court, right? Well, I think you have the power to remand it for an evidentiary hearing to further develop the facts if that were necessary, but I don't think that's necessary here because you have this performance by the defense lawyer and the government tries to excuse the conduct and the performance by saying, well, he was trying to make Roberto Brown, one of the three eyewitnesses, look like a liar. Now that's crazy. Roberto Brown's an exculpatory witness primarily for my client. Roberto Brown says it was Donald Cosman who delivered the soccer-style kick to Moore's head, not my client. But you said for the most part, so. Well, he did say that my client. All parts, right? He said my client punched Moore while he was on the ground. But don't you think the result probably would have been different if the jury believed Brown that it was Cosman, not my client, who delivered the soccer-style kick? And thus, that testimony conflicts with Cosman's testimony, who puts the blame on my client, and the only other witness is Lowry, who has his eyes closed during the kick, which was the main evidence against my client as to these civil rights charges. You'd still be asking the jury to believe the witness with respect to what you deem exculpatory and to not believe him with respect to the punch, right? What the government is saying, the strategic purpose of asking about this prior bad act evidence that would have never been before the jury, is to make Brown look like a liar. Why would you? The point is that you're going to be faced with that choice either way. Both you and the government are going to have to say that he lied about some things and told the truth about others, right? No. If I was a defense lawyer at trial, I would say Brown was telling the truth as he remembered it, okay? Perhaps he was mistaken about this one punch, okay? However, because of his testimony, you can't credit the testimony of the other two prosecution witnesses, and the defense lawyer gave up that whole argument by trying to destroy the one witness that primarily helped his client, which I think is prejudicial and affected my client's due process rights. I think a new trial is required on that count. Do I have time left? I think you have 30 seconds over. Do you have something quick? In terms of the sufficiency argument, your honors, Lopresti is the best case, I think, to guide us on this matter. In Lopresti, that's a case where you have a conspiracy ripening, where you have a corrections officer at the MDC in Brooklyn who says to an inmate, take the shirt off your dreadlocks. The inmate refuses, and that corrections officer says, okay, I'll show you, goes to his colleague's corrections officer and says, we're going to teach this guy a lesson, returns a half hour later to the inmate's cell, and they give him a beating to punish him for not following their direction. That's a situation where you have planning. You have time for the understanding to develop. Here, this is a plain vanilla assault with no words forming an agreement, no tacit or other indications, nonverbal conduct. There's nothing. If this is a conspiracy to violate civil rights, that any time two people beat somebody up, it's a conspiracy. I don't think that's the law, and this couple-minute physical incident, I don't think, rises to the level of a Federal civil rights conspiracy. And I think I've reserved a minute for rebuttal, Judge. Thank you. Roberts. All right. Mr. Denber? May it please the Court. My name is Andrew Denber. I'm an assistant United States attorney in the Southern District of New York, and I represent the United States of America in this appeal. I also represented the United States in the district court at the trial of this case, as well as at the sentencing of both of these appellants. The convictions and sentences in this case should be sustained by this Court, affirmed by this Court. The evidence in this case against each of these appellants was, frankly, overwhelming. To the extent there is any error in this record, and we suggest there is absolutely none whatsoever, any error would be harmless in light of the overwhelming proof that established that these two appellants, as well as others who were charged, committed a brutal and unjustified assault upon an inmate at the Downstate Correctional Facility. Among other things, it was — there was no resistance, as counsel tries to argue in this case, not resistance that would justify the excessive amount of force that was used in this case. As we lay out in our brief, Mr. Moore objected to being put into a cell. He was a 54-year-old man at the time, and the cells were reserved for inmates with mental health issues. He did not have any mental health issues. He became verbal and he objected, but he never attempted to assault, strike, kick, or inflict any kind of injury on any of the officers. His resistance was verbal and nothing more than that. And one of the officers, Carson Morris, who pled guilty before the trial in this case, had enough of his — got into a verbal dispute with him about that, had enough of what he was complaining about, and started the assault in this case by punching Mr. Moore in the chest, knocking him backwards. And that's when Mr. Santiago jumped on Mr. Moore and forced him to the ground. The assault in this case started with Mr. Morris's punch to the chest, knocking Mr. Moore backwards. Okay. When does the conspiracy start? I guess that's the question that I think is being raised. Your Honor, it starts as soon as Mr. Santiago jumps in after Mr. Moore was assaulted by Morris and forces him to the ground. That's when it starts. And once he's on the ground — How does it start there? How is that an agreement? Your Honor, what happens is the agreement is — let's sit back for a moment, okay? Correction officers, whether they're Federal or State, and certainly in New York State, are trained and are responsible for the care, custody and control of inmates. They are trained on how to use force and when not to use force against inmates. The use of force by Morris was unjustified and excessive. Once he started the assault and Santiago joined in and the others joined in, including Scott, as they each joined in, they joined what was clearly an unlawful act, the assault upon Moore, knowing full well that if you use excessive force against an inmate, you're violating that inmate's constitutional rights. So as each individual joined in on the assault, seeing what was in front of them, which was an assault started by Morris, they joined in. Obviously, Morris, who starts it — So even if it's spontaneous, as your friend describes it, then the act of participation constitutes a conspiracy? Is that your — Well, there is no time limit. There's no period of time in which a conspiracy has to form. This particular type of conspiracy, based on the facts in this case — I'm sorry? This kind of conspiracy is essentially a very simple form of conspiracy. It's not complicated like a financial crime. No, we get that. I guess the issue is anybody throwing a punch, that is an agreement. You're saying after the first punch is thrown, anybody who throws a second punch or a third punch or physically restrains the individual has tacitly agreed to the assault. Well, as they start joining and continue the assault, the unlawful conduct, it's a decision they make. All right. But at the very least, there's a point at which Scott directs the probationary officers out of the room, right? That is correct. And when is that in relation to what you've just been describing? Your Honor, that happens after Mr. Moore is taken to the ground. So at that point, at the very least, you would say at that point there's a conspiracy because anybody who stays after that to kick or restrain has tacitly joined the conspiracy. Absolutely. That is crystal clear at that point, Your Honor. And what happens is Ms. Scott maintains the — helps restrain with the assistance of Officer Lowry, who held the legs. They maintain the restraining as a succession of officers, one after another after another, commences the assault and continues assaulting. The most devastating of all the injuries was inflicted by Santiago, who, as Mr. Lowry, who was — who knew him quite well, worked with him, and was only two or three feet from him holding the legs as he saw Santiago kick him with tremendous force in the head. I would add, by the way, counsel mentioned how Mr. Brown may have been inconsistent. Mr. Brown hadn't met any of the other officers involved in this incident until either the day before or the day of the incident. He didn't know who they were. He was brand new in the facility, had only worked there for a few days. So his mistaking one officer for another is quite understandable. And obviously, that was argued in the trial court and was unpersuasive. And certainly, viewing the evidence in the case Most Favorable to Government, it is clear that Mr. Santiago did exactly what I just described, with tremendous force, describing Mr. Lowry, kicked him in the head, causing the multiple facial fractures he suffered. And then the other officers, including Santiago, who then subsequently, after the case directly ended, went up to Mr. Moore, laying helpless and defenseless on the ground, and pummeled him on the side, punching him repeatedly on the side, after other officers had kicked him, kneed him, and punched him at various parts of his body. Sergeant Scott, seeing all this, maintained the restraint throughout the assault, never, at any point in time, ordering the other officers to stop it. She had a legal duty to do so. Her failure to do so is yet another reason why she is guilty of the charges in this case. And so with respect to the aiding and abetting, are you saying that the failure to act was sufficient, if that's all the jury found, to convict her for aiding? Oh, not at all, Your Honor. Her restraining and allowing and facilitating the other officers to impose or to beat Mr. Moore with impunity aided them. He couldn't resist. So that's the theory of aiding and abetting. It's based on her acts, not her failure to act. Is that what you're saying? Your Honor, we believe that there's sufficient proof in this record to establish her liability as a principle, not merely as an aiding and abetting. No, I understand that. But the jury was instructed on aiding and abetting, and they didn't – there wasn't a special verdict form that had them say whether aiding and abetting were a principle. That's correct. There was no special verdict form. And so the allegate or the argument of counsel is that the instruction on aiding and abetting was wrong because it would have allowed the jury to convict for aiding and abetting based on the failure to act. Correct. Okay. But under 242, Your Honor, which incorporates rights under the Constitution, appellants sort of ignored that. But 240 – excuse me, the conspiracy count 241 incorporates, it's the conspiracy to violate one's civil rights, which includes the constitutional rights. In this particular case, it's the Eighth Amendment, the right of an inmate to be free from cruel and unusual punishment. There's a concomitant responsibility and legal duty of those who have custody over such persons to ensure that they are not assaulted and excessive force is not used against them. Her failure to stop the assault is – makes her guilty under both the conspiracy and the substantive civil rights charges in this case. Okay. But if that – if the only thing she did, if she was just standing there, didn't touch it, hypothetically, but failed to act, failed to issue an order directing that it stop, would that be sufficient for aiding and abetting 242? I believe it would, Your Honor, under the cases that we've cited, cases where – where – I'm just trying to nail down your position. Either other officers were – You're saying that that would be enough, and so the instruction, to the extent it says what I guess it was Mr. Hawkeiser said it said, that's okay, that's not an error, that's what you're saying. I am saying that, but obviously, the record is replete with her engaging in affirmative acts to assist, not merely just standing and not ordering. With respect to, Your Honor, the argument made about interjecting to assist – Just to clarify that point, that – just sorry, just to follow up on that last point. The failure to act, your position would be that it's – is that dependent on her position as a supervisor or not? Well, based on the case law, Your Honor, I don't believe it is, even though our proof at trial clearly established that as a superior ranking officer, she had an obligation if she observed other officers engaging in the use of excessive force, that she had an obligation to stop it. But I believe that the cases we cite in our brief are instances where there were just you can be simply a law enforcement officer not taking action where you should be, and that would be enough. But here, certainly, she had that obligation, and she was the only ranking – she was the highest ranking officer involved in this incident. And as I said, we had testimony from a training officer and from her superior officer testifying to the – who testified that she had an obligation under their own rules and regulations to stop such conduct. All right. I guess in that vein, I'd ask you just to address Mr. Wilstater's argument about role – the role enhancement. Sure. For the conspiracy. It's clear from the transcript of the sentencing, Judge Karras did not impose the role enhancement based on the mere fact that she was a sergeant or the highest ranking officer in the – involved in the incident. It was based on her conduct. And as a sergeant restraining an inmate who is being beaten after – while a succession, one after the other after the other of these officers, are assaulting him, as I think Judge Karras said – That makes her a leader? I'm sorry? That makes her a leader? Well, Your Honor, because she held that position and also didn't stop the conduct The position – her position is central to the calculation that she's a leader, right? It's an important fact. I'm not suggesting it's not. But it's not merely because she was – it was not merely because she was the ranking officer and didn't stop it. She facilitated the assault by restraining the inmate. But there were other people who restrained him as well. At her direction, correct. Well, all right. So at her direction. So how did she direct them to restrain? She ordered Mr. Lowery to put the leg lock on Mr. Moore. Okay. And that's – I mean, look, restraining is not a problem. Restraining with a view to perpetuating a beating is a problem. Exactly, Your Honor. The timing of the order to restrain is when in relation to the blows? It's before Mr. Santel kicked Mr. Moore in the head. It's before Mr. Marsh punched him on the side of his body. It's before an officer, Rosario, punches Mr. Moore in the head, as we lay that all out in our brief, the sequence. The restraint is before, frankly, all of the damages, all of the injuries inflicted on Mr. Moore, the five fractured ribs on the left side of his body, the multiple fractures around his right eye, the collapsed lung on the left side of his body, all those injuries are inflicted after she orders the restraint. And she also assists in restraining Mr. Moore. And after she's ordered the probationary officers out of the room? Correct. Correct. Which arguably, at least the jury could draw an inference that that was a signal as to, okay, we're taking care of this. Correct. Okay. Thank you, Mr. Dember. We'll now hear Mr. Wilstadter for a minute of rebuttal. Your Honor, as my opponent has just pointed out, the order to – for the trainees to go into the bubble was before any assaultive conduct or serious assaultive conduct in the case. The initial push or punch to Moore was not alleged to have caused any injury to him. This is Morris's push where the gentleman fell down. But the – there is no reasonable view of the evidence that ordering the trainees into the bubble where they would have a full view of this incident was to facilitate, encourage, or promote a later assault, which was entirely spontaneous after they were trying to restrain, lawfully restrain, this inmate. And I also wanted to point out that the Eighth Amendment is a prohibition against a cruel and unusual punishment. It's not an affirmative duty. It's a prohibition. It doesn't call on someone to do something. It calls on States or State actors not to – to inflict cruel and unusual punishment. So in that way, even if the government wants it to, the – that particular civil right is a prohibition and not an affirmative act – I mean, not a failure type of statute or law.  TONER. Okay. Thank you. We'll now hear from Mr. Hockeyser for a minute. MR. HOCKEYSER. Your Honors, I just – I want to make a quick point about the restraint enhancement which was imposed against Mr. Santiago. I think the record is clear that the officers were – had handcuffed one of his wrists and had put him in the leg lock to gain control of him. Otherwise, why are they doing that? The government will say, well, to beat him up. Well, that – we know that the reason that this all – MR. COHEN. That's the jury – that is the jury question, right? That was the defense, is that this was frenetic and chaotic and they were just trying to get control of the situation. It was not a conspiracy to assault. But the jury decided that, right? MR. HOCKEYSER. Well, they didn't decide the restraint enhancement. The restraint enhancement was added by Judge Karas at sentencing. MR. COHEN. But if the jury found him, your client, guilty of conspiracy to violate the civil rights, then, you know, the logical inference is that the restraint was part of that.  HOCKEYSER. Not when you're dealing with corrections officers and an inmate. And the corrections officers – this is not a situation where if this was a bank robbery, I would agree with your Honor, and they were tying somebody up. But these are corrections officers who have a legal duty, an obligation to control inmates, and they were trying to get him into a cell, so they handcuffed him. They tried to put him in a leg lock. There's no evidence in the record that this was in furtherance of an assault, as opposed to gain control of the inmate. MR. HOCKEYSER. That's really a sufficiency argument, I think. It's not an enhancement argument. MR. COHEN. Well, I think the enhancement argument that I tried to make at the sentencing is that the enhancement here for physical restraint was not designed by the sentencing commission to cover this situation. They weren't thinking about inmates and corrections officers where inmates, by definition, are restrained and confined. They were talking about robbing banks and such. And so I think this is, as I said in my papers, a fish out of water, and that you really can't have a physical restraint enhancement in a correction officer inmate situation here, where correction officers, I think it's indisputable, were at least to some extent trying to handcuff and put him into a cell.  HOCKEYSER. Okay. MR.  Thank you, Your Honor. MR. HOCKEYSER. Thank you all. We'll reserve decision. Have a good day and a nice weekend and a nice Thanksgiving.